# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RICHARD J. GIBSON,

                Petitioner,          :      Case No. 3:22-cv-173

     - vs -                              District Judge Michael J. Newman
                                           Magistrate Judge Michael R. Merz

WARDEN, London Correctional
  Institution,

                                  :
                Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Richard Gibson under 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 9), the Return of Writ (ECF No. 10), and Petitioner's Traverse to Return of Writ (ECF No. 17). Also before the Court is Petitioner's Motion for Summary Judgment (ECF No. 33) which Respondent opposes (ECF No. 34).

**Litigation History**

On October 25, 2019, the Montgomery County Grand Jury returned an indictment in case number 2019 CR 3197, charging Petitioner with sixteen counts of rape of a minor less than thirteen years of age in violation of Ohio Revised Code § 2907.02(A)(1)(b)(Indictment, State Court Record, ECF No. 9, Ex. 1). A jury convicted Gibson on all counts and he was sentenced to ten years to life

1

imprisonment on each count, to be served consecutively. *Id.* at Exs. 10, 11. Gibson appealed to the Ohio Second District Court of Appeals which affirmed the conviction and sentence. *State v. Gibson*, 2021-Ohio-3614 (Ohio App. 2nd Dist. Oct. 8, 2021)(Copy at State Court Record ECF No. 9, Ex. 18). Gibson appealed to the Ohio Supreme Court, but that court declined to exercise jurisdiction. *Id.* at Ex. 22.

While his appeal was pending, Gibson filed a petition for post-conviction relief under Ohio Revised Code § 2953.21, claiming ineffective assistance of trial counsel. *Id.* at Ex. 23. The trial court overruled the petition. *Id.* at Ex. 24. Gibson again appealed to the Second District which dismissed his appeal for want of prosecution. *Id.* at Ex. 29. Gibson did not appeal further to the Supreme Court of Ohio, but filed his Petition for Writ of Habeas Corpus in this Court, pleading the following grounds for relief:

> **Ground One**: Ineffective Assistance of Trial Counsel violation of my due process, 6th and 14th U.S. Const. Amend. R. Deny fair trial.
>
> **Supporting Facts:** My attorney court appointed, Lucas Wilder, was told by myself and April Gibson I have exculpatory critical physical evidence that exonerates me. I pierced my penis in June, 1999 and took it out Dec. 31, 2013. He failed to investigate it. He failed to medically verify it. He denied me an evidentiary hearing. He failed to cross-examine the victim with it to impeach the testimony given. There would have been a different outcome had he not prejudice the jury to suppress my end.
>
> **Ground Two**: Deficient Police Investigation Violation of my due process, denied fair trial, violated my 4th and 14th U.S. Const. Amend R.
>
> **Supporting Facts:** During both investigations my exculpatory critical physical evidence was available for discovery. Had the second investigation done so, they would have concluded as the first investigation had, that there was no case. They either willingly or unintentionally gave false misleading statements to the prosecutor by omitting or suppressing my physical evid. Had they not, there would have been no reason for the prosecutor to indict me as I am innocent of all these allegations.

**Ground Three**: Prosecutorial Misconduct violated my due process, right to a fair trial, violated my U.S. Const. Amend .R.4th, 5th, 6th, 14th

**Supporting Facts:** The prosecutor failed to independently verify the police investigation. They presented a deficient police investigation to the Grand Jury and got an unlawful indictment against me. They also presented the same deficient police investigation to the trial jury and inconsistent statements made by the victim to police and medical staff and sworn testimony.

**Ground Four** Malicious Prosecution Denied fair trial, violated my right to due process and my U.S. Const. Amend. Rights 4th, 5th, 6th, 8th and 14th

**Supporting Facts:** Because of the deficient police investigation, the prosecutor used this to prejudice the jury against me, lead them astray, and made a decision not based on the rule of law. There is no confidence in the court, and no confidence in the jury's decision. Had my evidence been entered, it would have completely discredited the victim's testimony, impeached all of the victim's testimony and the prosecution, State, would have had no case. They have put me in harm's way due to wrongful conviction.

**Ground Five**: Insufficiency of the Evidence

**Supporting Facts:** All the convictions are based on the victim's testimony. If my evidence that exonerates me was not suppressed by my trial counsel or the State's prosecutor, it would have impeached and discredited the victim's sworn testimony. Had my counsel properly cross-examined the victim he could have shown the pattern on inconsistent false statements of the victim. The manifest and sufficient evidence I have with the physical evidence and four (4) sworn affidavits exonerates me.

**Ground Six**: Prejudice and Bias of Trial Judge denied fair trial. Violate my due process and U.S. Const. Amend. R. 8th and 14th

**Supporting Facts:** I request an evidentiary hearing. I requested this of Judge Mary Montgomery to prove my innocence and I was denied. I have requested copies of the investigations. The trial transcripts, discovery from prosecution to defense and from defense to prosecution to adequately prepare to defend myself. Again she has denied me these. If defense counsel disclosed my physical evidence to the prosecution and the judge after he was made aware,

3

they are all suppressing my evidence. Her behavior gives reasonable
person the thought she is prejudice [sic].

(Petition, ECF No. 1).

# Analysis

Respondent asserts all of Petitioner's claims are barred by his procedural defaults in failing
to fairly present those claims to the Ohio courts (Return of Writ, ECF No. 10, PageID 348).
Ground One is said to be defaulted because it should have been raised on direct appeal but was not
and is therefore barred by *res judicata.* Ground Five on insufficient evidence was raised on direct
appeal as the First Assignment of Error.  *State v. Gibson, supra*, at ¶ 22.  However, Gibson did not
include insufficiency of the evidence in his subsequent appeal to the Supreme Court of Ohio (See
Memorandum in Support of Jurisdiction, State Court Record, ECF No. 9, Ex. 20).  Respondent
asserts none of Gibson's other Grounds for Relief was presented to the Ohio courts at all.

The procedural default doctrine in habeas corpus is described by the Supreme Court as
follows:

> In all cases in which a state prisoner has defaulted his federal claims
> in state court pursuant to an adequate and independent state
> procedural rule, federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause of the default and actual
> prejudice as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406
(6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights
claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S.
72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal
habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal

habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 582 U.S. 521, 527 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 582 U.S. 521, 527(2017)).

> "A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*.

> Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

*Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

**Ground One:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Gibson claims he was denied effective assistance of counsel by his trial attorney's failure to present what Gibson describes as "critical physical evidence":

> My attorney court appointed, Lucas Wilder, was told by myself and April Gibson I have exculpatory critical physical evidence that exonerates me. I pierced my penis in June, 1999 and took it out Dec. 31, 2013. He failed to investigate it. He failed to medically verify it. He denied me an evidentiary hearing. He failed to cross-examine the victim with it to impeach the testimony given. There would have been a different outcome had he not prejudice the jury to suppress my end.

This assertion formed the basis of Gibson's First Claim in post-conviction (Petition, State Court Record, ECF No. 9, PageID 253).  Common Pleas Judge Mary Montgomery rejected this claim on the basis of the Ohio criminal doctrine of *res judicata* which provides that if a claim can be adjudicated on the direct appeal record, it must be raised on direct appeal (Decision, State Court Record, ECF No. 9, Ex. 24, citing *State v. Perry,* 10 Ohio St. 2d 175 (1967); *State v. Lentz*, 70 Ohio St.3d 527 (1994); and *State v. Cole*, 2 Ohio St.3d 112 (1982).  She noted that Gibson had taken the stand at trial and summarized his testimony:

> Specific to Defendant's testimony, Defendant denied ever engaging in any sexual conduct with T.R. and stated he did not have a tattoo on his leg. The Defendant did admit, however, that he was "hairy," had a small dragon tattoo on his shoulder blade and had T.R,'s name tattooed on his arm. During his trial testimony, Defendant never mentioned having a piercing on his penis.

*Id.* at PageID 260.

To the extent Gibson believes this *res judicata* ruling is incorrect as a matter of Ohio law, he never completed his appeal to the Second District to challenge that ruling.  Although the Second District allowed his appeal to proceed, he never filed an appellate brief.  He cannot blame that

failure on attorneys because he did not have counsel in post-conviction and was not entitlted to appointed counsel under the Sixth Amendment.

Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Gibson never disputes in his Traverse the correctness of Judge Montgomery's *res judicata* analysis. Instead he claims any procedural default is excused by his actual innocence. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

Applying the actual innocence doctrine, the Sixth Circuit has held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless

the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." Id. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" Id. at 321.

*Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005).

The relevant time period for the offenses is apparently May 2010 when the victim moved into an apartment below Gibson's until April 2013. *Gibson, supra*, at ¶ 3. According to Gibson, his penis was pierced from sometime in 1999 until December 31, 2013, when it was removed, he says, because of a New Year's Eve concert. Thus by Gibson's accounting, the piercing would have been there throughout the time of his interactions with the victim[1]. This is new evidence in the sense that it was not presented to the jury. Although it is plainly not newly-discovered evidence[2], all that is required by the actual innocence doctrine is that the proffered evidence not have been presented to the jury. *Cleveland v. Bradshaw*, 693 F.3d 626 (6th Cir. 2012).

This newly-presented evidence does not however, prove Gibson is actually innocent. He asserts that "With my having a(n) evidentiary hearing, I can show that due to the location of my

---

[1] Gibson does not tell us whether the piercing could be removed and replaced and that is not, at least for members of the undersigned's generation, a matter of common knowledge. Pierced ears on women and more recently on men are not uncommon in this American culture, but earrings for that use are frequently swapped out and removed at night.
[2] Gibson must have known of the piercing as soon as it happened, or at least as soon as the anesthetic wore off.

8

piercing and type of piercing, that anyone who claimed to have performed any of the acts alleged, they

would have no other choice but to have been aware of this." (Traverse, ECF No. 7, PageID 384.)  He

does not describe either the location or the type of piercing, although presumably anyone who engaged

with him in vaginal intercourse or fellatio would have been aware of it.  The victim did not describe

the piercing, although she did testify to tattoos Gibson does not deny having[3].  She was not asked about

the piercing.  She did testify that Gibson used a condom during vaginal intercourse and that this conduct

was painful to her, both physically and emotionally.   Gibson offers an elaborate conspiracy theory

about collusion among his attorney, the prosecutor, the police, and even Judge Montgomery not to

have her questioned about the piercing, but it could very well have been defense counsel did not ask

the question because it could well have produced jury sympathy for the victim.  In any event, there is

no evidence in the record to support Gibson's theory of collusion.

Gibson argues he must be innocent because his piercing would have caused pain and bleeding

in a woman as young as the victim, requiring medical attention:

> [A] reasonable person with limited knowledge of medicine, could
> reasonably conclude that, "if intercourse with someone that young,
> as alleged took place, the piercing would have caused such damage
> and bleeding as it would have warranted medical attention during
> the times alleged to have occurred." By the fact there was no medical
> attention sought, this is well within reason to believe that the
> allegations are false.

(Traverse, ECF No. 17, PageID 385-86.)  This assertion is completely speculative.  Certainly the

pain caused by intercourse with a person with a pierced penis is not a matter of common knowledge

and Gibson has presented no medical testimony to prove the truth of that assertion to this Court,

nor did he in conjunction with his petition for post-conviction relief.  As noted above, the victim

testified to pain during intercourse.  Why she should have gone further and volunteered the

---

[3] Gibson offers no explanation why a gardener who was supposedly trying to be a father figure to this young girl would have had her name tattooed on his arm.

presence of a penile piercing is, again, speculative.

In sum, Gibson has not offered new evidence of actual innocence of the type and quality sufficient to satisfy the *Schlup* standard so as to overcome Respondent's procedural default defense on any of his Grounds for Relief, including Ground One.

Petitioner offers various other excuses for his procedural defaults. He claims he did not properly exhaust his appeal from denial of his post-conviction petition because his appointed appellate attorney told him he could not appeal that denial. The record belies this claim because Gibson did in fact file an appeal, but then procedurally defaulted by not filing an appellate brief. He must bear the responsibility for that default himself because his direct appeal attorney did not represent him in post-conviction. If he believes he suffered ineffective assistance of appellate counsel when his direct appeal attorney gave him this advice and that caused this particular procedural default, he was obliged to present that claim to the state courts by way of an application to reopen under Ohio R. App. P. 26(B). *Edwards v. Carpenter*, 529 U.S. 446 (2000)*,* But he never filed a 26(B) application and the time for doing so has now expired.

Ground One is procedurally defaulted and should be dismissed with prejudice on that basis.

**Ground Two: Deficient Police Investigation**

In his Second Ground for Relief, Petitioner claims he was denied a fair trial because the police did not discover his pierced penis and report it to the prosecutor. This claim is procedurally defaulted because it was never presented to the Ohio courts.

More fundamentally, Ground Two fails to state a claim on which habeas corpus relief can be granted. Federal habeas corpus is available only to correct federal constitutional violations. 28

U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   The Supreme Court has never held that a conviction is unconstitutional because the police did not conduct a close inspection of a defendant's body parts and report their findings to the prosecutor. The police are required to disclose to a defendant in pretrial discovery any exculpatory evidence they possess. *Brady v. Maryland*, 373 U.S. 83 (1963).  But that rule does not apply to information already in a defendant's possession as this supposedly critical physical evidence was. *Brady* "is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial." *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994).  There is no *Brady* violation where the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available to the defendant from another source.  *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.), *cert. denied,* 502 U.S. 846 (1991).

Ground Two should be dismissed with prejudice for failure to state a cognizable constitutional claim and as procedurally defaulted.


**Ground Three:  Prosecutorial Misconduct**


In his Third Ground for Relief Petitioner claims the prosecutor violated his constitutional rights by not independently verifying the results of the police investigation.  This Ground for Relief is procedurally defaulted by Gibson's failure to fairly present it to the Ohio courts.

Moreover this Ground for Relief fails to plead a claim on which habeas corpus relief can

be granted.  A prosecutor's intentional presentation of evidence he or she knows is false violates a defendant's due process rights.  The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell,* 178 F.3d 759, 766 (6th Cir. 1998), *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony.  *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir.  2012), *citing Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486  (6th Cir. 2000), *citing United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986).  The statement must be indisputably false, rather than simply misleading.  *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000).  Mere inconsistencies in testimony do not establish the knowing use of perjured testimony.  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

However, the protection against intentional presentation of false evidence does not extend to a due process requirement that the prosecutor conduct an independent investigation.  Law enforcement agencies – police departments, sheriff's offices, the Federal Bureau of Investigation, etc. – are society's usual means of investigating criminal behavior and presenting evidence to prosecutors.  Nothing in the Constitution requires prosecutors to investigate crimes independent of the police.

Ground Three should therefore be dismissed with prejudice as procedurally defaulted and for failure to state a claim cognizable in habeas corpus.

**Ground Four:  Malicious Prosecution**

Ground Four should be dismissed with prejudice on the same basis as Ground Three.

**Ground Five:  Insufficient Evidence**

In his Fifth Ground for Relief, Petitioner claims he was convicted on constitutionally insufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*).

Gibson presented this claim to the Second District on direct appeal and that court decided the claim as follows:

{¶ 22} The first assignment of error alleges:

The Evidence Presented at Trial was Insufficient and Against the Manifest Weight of the Evidence to Sustain Gibson's Convictions.

{¶ 23} R.C. 2907.02(A)(1)(b) pertinently provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender" when "[t]he other person is less than thirteen years of age." The statutory definition of "sexual conduct" includes "vaginal intercourse," "fellatio, and cunnilingus," and "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." R.C. 2907.01(A).

{¶ 24} Each of the 16 rape counts alleged that Gibson engaged in one of four types of sexual conduct with T.R.—vaginal intercourse, vaginal penetration, cunnilingus, or fellatio—at one of four locations—Gibson's apartment, T.R.'s apartment, the rental office, or Gibson's mother-in-law's house. There was no dispute as to T.R.'s age. The issue in this case was whether Gibson engaged in sexual conduct with her. Gibson argues that the evidence was insufficient, largely because T.R.'s testimony about the sexual conduct, he says, merely parroted the statutory language. Gibson's manifest-weight argument attempts to show that the jury should not have believed T.R.'s claims of rape.

{¶ 25} We consider both evidentiary challenges together in our analysis. "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. "Consequently, 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *State v. Curtis*, 2020-Ohio-4152, 157 N.E.3d 879, ¶ 44 (2d Dist.), quoting *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. Accordingly, our review of the weight of the evidence also suffices to determine Gibson's sufficiency challenge.

{¶26} "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d

380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 27} T.R. testified that Gibson engaged in vaginal intercourse, fellatio, and cunnilingus with her and put his finger into her vagina. And she testified that he did each of these things in his apartment, in her apartment, in the apartment office, and at his mother-in-law's house. T.R. gave many details about these encounters, beyond simply stating that he did each of the sexual acts. The testimony of the State's other witnesses tended to corroborate T.R.'s testimony. Gibson testified at trial that T.R. was wrong and that he did not engage in any sexual conduct with her. Ultimately, the jury believed T.R. over Gibson.

{¶ 28} "The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts, the jury here, to resolve." *State v. White*, 2d Dist. Montgomery No. 20324, 2005-Ohio-212, ¶ 65, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." (Citation omitted.) *Id.* at ¶ 67. Because witness credibility is a matter for the trier of fact to resolve, a jury does not lose its way simply because it chooses "to believe the State's witnesses and disbelieve Defendant, which it was entitled to do." *Id.* at ¶ 69. The evidence here was clearly sufficient to find Gibson guilty on all the rape charges. The only real argument left to Gibson was that T.R. was lying. And that is the conclusion that his manifest-weight argument urges, based on various inconsistencies and conflicts in her testimony.

{¶ 29} Gibson points out that T.R. told the nurse at the hospital that the abuse happened when she was seven or eight years old, which was before she had met Gibson. Moreover, he argues that T.R. described her abuser as having a tattoo on his leg, which he did not have; T.R. also said that he had a tattoo of a small dragon on his shoulder, but his tattoo was on his shoulder *blade.* In our view, none of these inconsistencies rendered T.R.'s testimony unbelievable. At trial, T.R. admitted that she was wrong about when the abuse happened. As to her physical description of Gibson, T.R. told the nurse that her abuser's first name was "Richard" and that he was old and hairy, which Gibson admitted he was. While she was mistaken about the leg tattoo, Gibson is caviling when he brings up her description of his dragon tattoo's location.

15

{¶ 30} Gibson also argues that T.R.'s articulation of how each sexual act occurred was generic. In her testimony, T.R. repeatedly said that Gibson had engaged in four types of sexual conduct with her in each of four places. Gibson argues that she could not articulate and identify each sexual act at each location without being led by the prosecutor; she was able only to generally describe the act itself (e.g., penis in vagina, penis in her mouth, mouth on her vagina, and fingers in her vagina). T.R. was general and repetitive, says Gibson, about how each act occurred. Gibson also points out that T.R. could not remember when the acts occurred—whether during the spring or winter, the summer or fall, during school or after school, or whether she was wearing her school uniform or regular clothing. We don't think that any of this was significant and see no problem with T.R. testimony as to how and when the sexual conduct occurred.

{¶ 31} Gibson also argues that T.R.'s initial disclosure was not credible. He says that her claims of abuse were not reliable and were simply based on a bad dream. This argument is belied by T.R.'s testimony describing the sexual encounters. Gibson points out that T.R. did not say anything to anyone about the abuse for five years, but the delayed disclosure was not unusual. Dr. Miceli explained that many people who are victims of childhood sexual abuse delay their disclosure for more than two years, and even until adulthood, if they ever disclose the abuse. T.R. herself explained that she did not want anyone to know about the abuse, because even five years later, she still felt guilty for what had happened.

*6 {¶ 32} After considering all of Gibson's arguments, we are not convinced that the jury was wrong to believe T.R. This is not the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. We conclude that the jury neither lost its way nor created a miscarriage of justice in finding Gibson guilty of the rape charges.

{¶ 33} The first assignment of error is overruled.

*State v. Gibson, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011);

*Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam).  The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Gibson argues that "All convictions are based on the victim's testimony."  The Sixth

Circuit has long held that the testimony of the victim alone is constitutionally sufficient to sustain

a conviction.  *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), *citing United States v. Terry*, 362

F.2d 914, 916 (6th Cir. 1966) ("The  testimony of the prosecuting witness, if believed by the jury,

is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th

Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was

constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical

evidence); *United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the

only evidence was testimony of the victim, that is sufficient to support a conviction, even absent

physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir.

1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial

evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

Petitioner's Fifth Ground for Relief is procedurally defaulted by his failure to include insufficiency of the evidence in his appeal to the Supreme Court of Ohio. It is also without merit because the state court's decision to the contrary is entitled to deference under AEDPA. Ground Five should be dismissed with prejudice.

**Ground Six: Trial Judge Bias**

In his Sixth Ground for Relief, Petitioner claims the trial judge in this case, Montgomery County Common Pleas Judge Mary Montgomery, was prejudiced against him. This claim is procedurally defaulted by Petitioner's failure to present it to the Ohio courts.

Ground Six is also without merit. The Due Process Clause of the Fourteenth Amendment guarantees that a criminal defendant will receive a trial before an unbiased judge. *Tumey v. Ohio*, 273 U.S. 510 (1927). But Gibson's only claim of bias against Judge Montgomery is that she has declined to provide him with post-trial access to the discovery in this case. A disqualifying prejudice or bias must ordinarily be personal or extrajudicial. *United States v. Sammons,* 918 F.2d 592, 598 (6th Cir. 1990); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1250 (6th Cir. 1989). That is, it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also Youn v. Track, Inc.,* 324 F.3d 409, 423 (6th Cir. 2003), *citing Grinnell*, *supra; Bradley v. Milliken,* 620 F.2d 1143, 1157 (6th Cir. 1980), *citing Grinnell*, *supra*; *Woodruff v. Tomlin*, 593 F.2d 33, 44 (6th Cir. 1979) (citation omitted). The Supreme Court

has written:

> The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias and prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for 'bias and prejudice' recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice. ... [J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion. See *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966). ... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*Liteky v. United States,* 510 U.S. 540, 554-55 (1994). Petitioner's Sixth Ground for Relief does not allege any extrajudicial source of bias against Gibson. Moreover, Judge Montgomery's actions which are purportedly caused by bias all have occurred since the trial was completed and therefore cannot have infected the verdict.

Ground Six should therefore be dismissed with prejudice.

**Motion for Summary Judgment**

The case is also before the Court on Petitioner's Motion for Summary Judgment (ECF No. 33) which Respondent opposes (ECF No. 34). Nothing in the Motion undermines the conclusions reached above that Petitioner's Grounds for Relief are procedurally defaulted and without merit. The Motion for Summary Judgment should therefore be denied.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that Petitioner's Motion for Summary Judgment be denied and that his Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 17, 2023.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. Parties are reminded that all papers filed in the case after the filing of the digitized State Court Record by either party shall include record references to the PageID number. Failure to include that reference will result in rejection of the filing.#